### FINCK et al. v. CANADAWAY FERTILIZER CO. et al.

(Supreme Court, Appellate Division, Fourth Department.   July 9, 1912.)

1. CORPORATIONS (§ 314*)—OFFICERS—FRAUDULENT CONTRACT—RESCISSION.

Where parties owning a brewery promoted the organization of a corporation in order to sell the brewery to it, and pursuant to a secret arrangement between themselves and two directors, whereby they were to divide the difference between the actual value of the brewery and the price for which it was to be sold, sold it to the corporation for double its actual value, the corporation could rescind the sale.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1393–1398, 1400; Dec. Dig. § 314.*]

2. VENDOR AND PURCHASER (§ 117*)—FRAUDULENT SALE—RESCISSION—RESTORATION.

Subsequent to the fraudulent sale of a brewery plant to a corporation, part of the buildings were destroyed by fire, and of the insurance collected part was paid to the vendors and part was used in restoring the property to its former condition. The corporation went into possession of the premises, mortgaged them for about one-fourth their value, and permitted judgments to be secured against it. *Held*, that such circumstances did not render it impossible for the corporation to make a sufficient restoration to compel the vendors to pay back the purchase money subject to the proper deductions.

[Ed. Note.—for other cases, see Vendor and Purchaser, Cent. Dig. § 209; Dec. Dig. § 117.*]

3. CANCELLATION OF INSTRUMENTS (§ 59*)—RESCISSION OF CONTRACT—JUDGMENT.

A judgment rescinding a fraudulent sale of real estate and ordering the vendors to pay back the purchase price subject to certain deductions was not erroneous for failure to direct deductions to be made for certain judgments against the purchaser, especially where the judgment creditors were parties to the action, and took no appeal.

[Ed. Note.—For other cases, see Cancellation of Instruments, Cent. Dig. §§ 119–125; Dec. Dig. 59.*]

4. CANCELLATION OF INSTRUMENTS (§ 59*)—RESCISSION OF CONTRACT—JUDGMENT.

Nor was such judgment erroneous for failure to direct deductions to be made for the value of the purchaser's use and occupation of the premises, where the vendors made no claim and proof thereof on the trial.

[Ed. Note.—For other cases, see Cancellation of Instruments, Cent. Dig. §§ 119–125; Dec. Dig. § 59.*]

5. APPEAL AND ERROR (§ 1033*)—HARMLESS ERROR—JUDGMENT.

An order amending the judgment by reducing the amount of recovery, if error, was harmless as to the unsuccessful party.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4052–4062; Dec. Dig. § 1033.*]

McLennan, P. J., and Foote, J., dissenting.

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Trial Term, Chautauqua County.

Action by Henry Finck and another against the Canadaway Fertilizer Company and others. From a judgment for defendants, plaintiffs appeal. Affirmed.

Argued before McLENNAN, P. J., and SPRING, KRUSE, ROBSON, and FOOTE, JJ.

A. C. Wade, of Jamestown, for appellants.
Thomas H. Larkins, of Dunkirk, for respondents.

KRUSE, J. The action is brought to foreclose a mortgage made by the defendant corporation to the plaintiffs to secure the balance of the purchase price of certain lands conveyed by the plaintiffs to it. A counterclaim was interposed, in the nature of a bill in equity, for a rescission of the contract and to set aside the conveyance made by the plaintiffs to the corporation and the mortgage given contemporaneously therewith upon the ground of fraud.

[1] While neither of the plaintiffs was an officer of the defendant corporation, one of them was active in promoting and organizing it. The primary purpose of the plaintiffs in promoting the organization of the defendant corporation and assisting in selling its stock seems to have been to dispose of their lands at a price advantageous to them. That would be all well enough, if the transaction had been fair and above board. But the finding of the trial court is that the price of $16,000 at which the property was sold to the corporation (which was about twice what it was worth) was brought about through the efforts of one of the plaintiffs, Henry Finck, and H. L. Tadt and L. J. Lang, who had an option upon the property, and had entered into a secret arrangement unknown to the other directors and stockholders of the company, by which they had agreed to divide between themselves the difference between the actual value of the land and the purchase price at which the property was sold to the defendant. This, in brief, is the ground upon which the judgment of disaffirmance and rescission of the sale rests, and I think is adequate to support the decision.

The details of the transaction and the circumstances surrounding the same should be stated more in detail. It appears that the lands were a former brewery plant, but for some years the brewery had not been operated, and the plaintiffs (the owners) were desirous of disposing of the same. It seems to have been thought that a railroad company might acquire the premises, or, if not, that a plan might be devised by which they could be sold to a corporation to be formed thereafter. The matter was discussed between the plaintiff Henry Finck and Tadt and Lang, and it was understood between them that a company should be organized, stock disposed of, and, when sufficient stockholders had been secured to warrant the organization, the property should be conveyed to the company for $16,000. Thereafter a writing was executed by the plaintiffs, which ostensibly and upon its face gave Tadt and Lang an option to purchase the property for $16,000; but at the same time another writing was executed by the plaintiffs, referring to the $16,000 option and to the organization of a corporation to take the title and to pay therefor the sum of $16,000,

and agreeing that, in case of the acceptance of the option and formation of a corporation, the real consideration to be paid by Tadt and Lang should be $12,000, besides $1,000 par value of stock of the corporation, instead of $16,000. It will thus be seen that if the property was worth but $8,000, as the trial court finds, there would be $8,000 to divide between the plaintiffs and Tadt and Lang aside from the $1,000 stock. Thereafter a corporation was formed. Although neither plaintiff was a director or officer in the corporation, the plaintiff Henry Finck was present at the time of the organization and took an active interest in selling the stock. Tadt and Lang and three others were named in the certificate of incorporation as the directors for the first year, and at a meeting within a few days after the filing thereof, held for the purpose of selecting directors of the corporation, they were again formally elected upon motion made by Henry Finck. Within about a month thereafter, stock having been sold in the meantime, a resolution was adopted by the board of directors to purchase the premises at the agreed price of $16,000, $7,000 of which was to be paid in cash and the balance by the company's obligation, secured by a mortgage; and upon the same day a warranty deed was made to the corporation conveying the premises to it, and concurrently therewith the mortgage in suit to secure the sum of $9,000 was executed by the corporation to the plaintiffs. Four thousand dollars of the moneys paid down was turned over to Tadt and Lang. Subsequently, for some reason which is not very clearly explained by the parties to the transaction, $200 or $250 was paid by each Tadt and Lang to the plaintiffs. Ten shares of the stock of the corporation were issued and delivered to the plaintiffs without the corporation receiving anything in return, except that according to the stock book it purported to be issued for services rendered. Plaintiffs contend, however, that they were ignorant of the circumstances under which the stock was issued, that their arrangement was with Tadt and Lang, and the stock was delivered to them under that arrangement. However that may be, it is quite apparent that the corporation never received anything for the stock. None of the other directors or stockholders was aware of the secret arrangement between the plaintiffs and Tadt and Lang, or of the division of the purchase price in excess of the real value of the property.

There are other circumstances which throw more or less light upon these transactions, but I think it unnecessary to refer to them, as it clearly appears, as it seems to me, that the transaction out of which the mortgage in suit arose was fraudulent as to the corporation, and upon discovery of the fraud the corporation could repudiate the transaction.

Counsel for the appellants in their brief say that they do not contend that a promoter of a corporation may fraudulently purchase property at one price and turn it over to his associates at a greater price, concealing the fact that he has made a profit on it; that this relates to the promoters, Lang and Tadt, and not to these plaintiffs, adding that, if the evidence justified the finding of a conspiracy, then one may be held as well as all, but contending such is not this case. I think the plaintiff Henry Finck was a promoter as well as Tadt

and Lang, and that the evidence fairly justifies the finding of a conspiracy. So far as the plaintiff Albert Finck is concerned, he was not present at any of the transactions, but, of course, he cannot for that reason hold the avails of the fraudulent transaction.

[2] The only serious question, as it seems to me, is whether circumstances have arisen since the consummation of the transaction which make it possible for the corporation or its receiver to make a sufficient restoration of the property conveyed to it by the plaintiffs, so as to compel the plaintiffs to pay back the purchase money received by them from the corporation.

After the conveyance by the plaintiffs to the corporation, changes were made in the brewery plant by moving some of the old machinery and putting in other machinery, and making improvements suitable for a fertilizer plant. Within about a year thereafter, a fire occurred, upon which about $7,000 in insurance was collected, $5,000 of which was for loss to the buildings. Under the terms of the mortgage, the plaintiffs were entitled to the insurance upon the buildings, but at the request of the company they turned back $3,400 with which to repair the buildings, retaining $1,700. While the buildings as restored were not as large as before, there is testimony to the effect that they were relatively of the same value as they were before the fire.

The trial court directed judgment setting aside the conveyance by the plaintiffs to the corporation, and also the mortgage made by the corporation to the plaintiffs to secure the balance of the purchase price, and directed a money judgment against the plaintiffs in favor of the receiver of the corporation, who was appointed and brought in after the action had been commenced, for the amount of the moneys which had been paid by the corporation to the plaintiffs, upon the purchase of the property, with interest thereon from the time of payment. A mortgage had been given by the corporation to one Reuben W. Wright to secure a loan of $2,000. The loan was made in good faith by the mortgagee to the company and the mortgage recorded. The amount of the mortgage and interest was deducted from the amount paid by the corporation, and the recovery is for the difference.

[3] In that connection it is also claimed that the judgments against the corporation, amounting to upwards of $1,200, are valid items, and should have been deducted. I think the judgments do not stand upon the same footing. Furthermore, the judgment creditors are made parties to the action and are bound by the judgment, and no appeal has been taken by them.

[4] It is further contended that the corporation having had the use and occupation of the premises from May, 1907, up to about March 1, 1910, when the plaintiffs took possession thereof, an allowance for the use and occupation thereof should have been made. That would seem to be equitable, but I think the plaintiffs should have made that claim and given proof thereof on the trial.

[5] After the decision was made, an order was made by the trial judge amending the judgment by reducing the amount of the re-

covery. The order has not been appealed from and certainly did the plaintiffs no harm, for it reduced the amount of the recovery by several hundred dollars. Of course, if the amount of the judgment is still too large by $80, as the plaintiffs claim, it can now be corrected. But I think appellants' counsel is in error in his computation. He has evidently computed the interest on the Wright mortgage from the date of the mortgage, August 17, 1908, instead of from August 17, 1909, as should be done, since the interest was paid to August 17, 1909.

As regards the extra allowance, I think that was not proper under the rule of this department, and that order should be reversed.

The judgment should be affirmed, with costs, and the order granting an extra allowance reversed, with $10 costs and disbursements. All concur, except McLENNAN, P. J., and FOOTE, J., who dissent in an opinion by McLENNAN, P. J.

McLENNAN, P. J. (dissenting). Of course, if there is evidence sustaining the finding that the plaintiffs entered into a conspiracy with Lang and Tadt to defraud the Canadaway Fertilizer Company, and such conspiracy was carried out to the detriment of the Canadaway Fertilizer Company, resulting in the giving of the mortgage in question, there can be no doubt but that the mortgage given and which is sought to be foreclosed in this action was tainted by such fraud, and is not enforceable. So that it becomes important at the outset to inquire whether or not there was any evidence supporting the conclusion of the trial judge that such conspiracy existed. As I read the evidence, it is to the effect that the plaintiffs were the owners of a certain plant and property in the city of Dunkirk, N. Y., which was theretofore operated as a brewery plant; that the plaintiffs were desirous of selling and disposing of such property, and to that end they entered into negotiations with Lang and Tadt looking to the sale of such property by the plaintiffs. As a result of such negotiations an option was given to Lang and Tadt to buy the brewery property at the sum of $16,000, and at the same time there was delivered to Lang and Tadt by the plaintiffs a contemporaneous agreement to the effect that, if the property of the plaintiffs should be purchased by the Fertilizer Company, then contemplated to be formed, for the sum of $16,000, the real consideration to be paid by Lang and Tadt should be the sum of $12,000, and for the balance of $4,000 they should procure to be issued and delivered to the plaintiffs capital stock of the corporation to be formed of the par value of $16,000. It was further provided in such agreement that in case a sale of the property should be made to the Lake Shore & Michigan Southern Railway Company, which it appears was being negotiated, Lang and Tadt should pay the plaintiffs the sum of $12,000 for the property, and, in case they received from the Railroad Company a sum in excess of $16,000, one-half of such excess should be paid to the plaintiffs.

These agreements having been executed and the respective parties having entered upon their performance, the defendant corporation, Canadaway Fertilizer Company, was organized, with a capital stock

of $30,000. Lang and Tadt, it must be conceded, were the principal instrumentalities in organizing such corporation. The plaintiffs, or either of them, at no time were stockholders, directors, or officers of such corporation, except as they became stockholders by the issuance to them of $1,000 of stock under the agreement above referred to. The corporation thus formed resolved to accept the property of the plaintiffs at the price given by the plaintiffs to Lang and Tadt, to wit, $16,000. In due form a mortgage was authorized to be given and was executed and delivered to the plaintiffs, which the plaintiffs accepted in full payment for the balance of the purchase price of their property which had been transferred to the corporation, $7,000 of the purchase price having been paid in cash, of which the plaintiffs received $3,000, the remainder being retained by Lang and Tadt under the agreement.

The question presented by this appeal is whether or not the purchase-money mortgage thus issued to the plaintiffs by this corporation can be annulled and declared void because of any fraud shown by the evidence to have been perpetrated by the plaintiffs in this case. The only question in this case is whether or not the plaintiffs as a matter of law under the undisputed evidence in this case can be charged with fraud such as to vitiate their purchase-money mortgage, given upon the transfer by them to the Canadaway Fertilizer Company of all the property described in the complaint. It seems to me that the evidence fails to raise even a question of fact in that regard; that the plaintiffs were owners in their own right of the brewery property described in the complaint; that they had a right to sell it at the best price obtainable; and that they had the right to induce Lang and Tadt to act for them and in their interests to dispose of such property in such manner as they might deem profitable and expedient, and to that end had a right to suggest to Lang and Tadt that they should form a corporation to exploit the sale of such property in the interests of the plaintiffs. Under plaintiffs' arrangement with Lang and Tadt, they, Lang and Tadt, assumed to form a corporation which, among other things, should take over the property of the plaintiffs at a price that was perfectly understood by the corporation when organized. In fact, every member of such corporation was in position to examine the property and determine the value for itself; the stockholders all being residents of the locality in which the property was located.

My conclusion is that the evidence utterly fails to establish that the plaintiffs or either of them entered into a conspiracy to defraud the corporation in the purchase of the property obtained by it from the plaintiffs, and that the mortgage given by the corporation is in all respects a valid and binding obligation as a purchase-money mortgage, and that the plaintiffs are entitled to foreclose the same in the ordinary way.

I conclude that the judgment appealed from should be reversed, upon questions of law and fact, and a new trial granted, with costs to the appellants to abide the event.