(165 App. Div. 826)

### FINCK et al. v. LAMPHERE. (No. 489/43.)

(Supreme Court, Appellate Division, Fourth Department. January 6, 1915.)

1. JUDGMENT (§ 747*)—CONCLUSIVENESS—MATTERS CONCLUDED.

In a suit to foreclose a purchase-money mortgage, where the receiver of the mortgagor corporation set up fraud in the sale of the property and prayed a rescission, the court found that the total assets of the corporation consisted of the mortgaged real property and certain described personal property situated on the realty. No other finding purported to determine the nature of the personalty and the mortgaged realty. *Held*, that the finding was not a determination that the articles of personalty were not fixtures.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1053, 1284–1296; Dec. Dig. § 747.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. JUDGMENT (§ 658*)—CONCLUSIVENESS—FINDINGS.

　　It is only the judgment which creates the estoppel, and findings that articles were fixtures is not conclusive adjudication of that matter, where the judgment made no such adjudication.

　　[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1169; Dec. Dig. § 658.*]

　　Kruse, P. J., and Robson, J., dissenting.

Appeal from Trial Term, Chautauqua County.

Action by Henry Finck and another against Loren J. Lamphere, as receiver of the Canadaway Fertilizer Company. From a judgment for defendant, plaintiffs appeal. Reversed and remanded.

See, also, 208 N. Y. 607, 102 N. E. 1102.

Argued before KRUSE, P. J., and ROBSON, FOOTE, LAMBERT, and MERRELL, JJ.

James L. Weeks, of Jamestown, for appellants.

Nelson J. Palmer, of Dunkirk, for respondent.

LAMBERT, J. On May 1, 1907, the plaintiffs in this action were the owners of real property upon which there were then various buildings, including a brewery, and, in such buildings, machinery and appliances affixed thereto. On that date the plaintiffs conveyed the real property to the Canadaway Fertilizer Company, and took back from that company a bond and mortgage for the sum of $9,000. The fertilizer company entered into possession of the premises and devoted the brewery building to its purposes as a fertilizer plant. Some of the fixtures were retained for use in the plant, and others were removed and different appliances substituted, more adaptable to the fertilizer business. New fixtures were also added. While so in possession and in the operation of such plant, the fertilizer company executed its mortgage thereon to one Wright for the sum of $2,000. In 1910 the plaintiffs began foreclosure of their purchase-money mortgage. The fertilizer company had become involved, and in the efforts of some of its creditors to realize against it the defendant was appointed receiver of that company, and as such defended the foreclosure. His defense was fraud in the sale of the property to the fertilizer company. In that defense he was successful, and the trial court awarded him a judgment rescinding such sale and canceling the bond and mortgage, and requiring that the plaintiffs pay to him upwards of $9,000. The judgment in the foreclosure action was affirmed in this court by a divided court (152 App. Div. 391, 136 N. Y. Supp. 914), and was later modified in the Court of Appeals (208 N. Y. 607, 102 N. E. 1102).

In its modification of the foreclosure judgment the Court of Appeals reduced somewhat the amount to be paid by plaintiffs to the receiver, and expressly held that the second mortgage, given to Wright, was a valid and subsisting lien upon the premises covered thereby. The findings of fraud in the sale of the real property were affirmed. The amount of the Wright mortgage was deducted from the amount to be paid by the plaintiffs, and that mortgage was left as a valid lien enforceable by Wright as against the title so left in the plaintiffs. The

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

plaintiffs have paid to the receiver the amount directed by the Court of Appeals. Following that litigation the receiver procured an ex parte order from the Special Term of this court, allowing and directing the sale by him of the various fixtures in the buildings upon this real property. This action followed, with the permission of the court, and an injunction was procured staying such sale, pending this action.

The plaintiffs claim title to the fixtures upon the theory that the effect of the judgment in the foreclosure case was to place the title to the real property in them, and that such fixtures, by reason of their manner of affixation and their general use, were a portion of the real property. The defendant receiver also bases his claims to title to such fixtures upon the findings and judgment in the foreclosure action. The trial court has held that the findings and judgment in the foreclosure action are res adjudicata in this action as to the ownership of such fixtures. Upon the trial the court refused to permit evidence of the manner of the affixation of such chattels to the realty and of the use to which same were put. In other words, the court regarded the doctrine of res adjudicata as the controlling feature of this case, and based its decision wholly thereon.

It is well-settled law that a judgment is conclusive upon the parties thereto only as to the matters adjudicated and the facts litigated, or necessary to sustain that adjudication. It is not all facts (whether immaterial or otherwise) that may creep into a litigation that become irrevocably established by the judgment in the action. It is those facts only which may be fairly said to have been within the issues, and to have been determined by the court as a part of the actual controversy between the parties, which become finally established. In re Mason, 120 App. Div. 741, 105 N. Y. Supp. 667; Lance v. Shaughnessy, 86 Hun, 411, 33 N. Y. Supp. 515; Griffen v. Keese, 187 N. Y. 464, 80 N. E. 367; Rudd v. Cornell, 171 N. Y. 114–128, 63 N. E. 823.

Examination of the record in the foreclosure action discloses the following situation, as to this controversy over the chattels: The complaint in that action is the ordinary foreclosure complaint, and alleges nothing with reference to such chattels, except as same may be determined to be a portion of the real estate. In other words, the only property described in the complaint is the real property. Three amended answers were served, and while the allegations therein are inartistically drawn, yet we prefer to hold those answers sufficient as containing allegations of ownership by the fertilizer company of those articles of property now in controversy. These answers demand judgment decreeing such ownership, and we may therefore assume that among the issues presented by the pleadings was one as to the ownership of this very property.

[1] In its findings in that action, the trial court has not passed upon such issue in any way, except it be by its twentieth finding. By such finding the court has said:

"20. That the total assets of said corporation consist of the real property described in the complaint and certain personal property situate on the premises described in the complaint, being [here follows a list of property embodying the articles now in dispute]."

Upon the findings thus made judgment was entered, which recited each of the findings in full as preliminary to the adjudication portion of the judgment. In the adjudicating portion thereof is to be found no reference to these chattels or fixtures. The judgment simply decrees as void the deed from the plaintiffs to the fertilizer company and the bond and mortgage given by the fertilizer company to the plaintiffs. The liability of plaintiffs to pay the fertilizer company a sum therein specified, and the dismissal of the plaintiffs' complaint, with costs, are also decreed. The findings contain no conclusion of law as to the ownership or character of these fixtures. It is thus apparent that the doctrine of res adjudicata, if applicable at all, must rest upon solely the twentieth finding of fact in the foreclosure action.

The extent to which a judgment is res adjudicata has been frequently discussed by our courts. In the case of Rudd v. Cornell, 171 N. Y. 114, 63 N. E. 823, the question was exhaustively treated and many of the cases reviewed. It was there said:

"It is settled by the decisions of this court that a judgment is conclusive in a second action only when the same question was at issue in a former suit and the subsequent action was between the same parties or their privies, and that the conclusive character of a judgment extends only to the precise issues which were tried in the former action. They must be identical in each action, not merely in name, but in fact and in substance, and the party seeking to avail himself of a former judgment must show affirmatively that the question involved in the second action was material and actually determined in the former, as a former judgment will not operate as an estoppel as to immaterial or unessential facts, even though put in issue and directly decided. In other words, a former judgment is final only as to the facts which are actually litigated and decided, which relate to the issue therein, and the determination of which was necessary to the determination of that issue."

It will be observed that finding 20 refers to both real and personal property, and that in form it adjudges the extent of the assets of the corporation. The same reasoning which spells out from it a finding of title in the corporation to the property now in dispute is applicable to place the title of the real property in such corporation. Yet it is clear that the court did not intend to so decree ownership of the real property, for the findings of the fraud make void the transfer of the real property to the corporation, and necessarily have the title to such property in the plaintiffs. It is true that such finding identified the property as "personal property." Such description, however, was evidently descriptive only, and used apparently as a means of identification of the fixtures. We see therein no indication of intention on the part of the court to finally and judicially determine the character of these fixtures. The purpose of the finding was quite evidently to point out the extent of the assets of the corporation rather than to adjudge the character of such assets.

[2] But, even if it is said that the defendant's contention as to the construction of finding 20 is the correct one, still we see no room for the application of the doctrine of res adjudicata. It is the judgment which creates the estoppel. Rudd v. Cornell, supra. The breadth of the judgment is to be measured by the adjudications therein contained. If the trial court has made its finding determining the character of

these fixtures, it has not seen fit to make its adjudication based thereon. Nor is it necessary to infer such a determination on the part of the trial court, to sustain the judgment actually rendered. The various adjudications made in no wise depend upon it, and are amply supported by the other findings in the case exclusive of that finding. In its determination in the foreclosure action the court apparently did not reach the question of ownership of these chattels. Ownership was claimed by the defendant receiver in that action as an affirmative claim there asserted by him. The action was disposed of by the dismissal of plaintiff's claim, and the court apparently did not pass upon the defendant's affirmative claim. We cannot see the application of the doctrine of res adjudicata to this situation, and hence no reason why the character of these fixtures is not to be determined by the ordinary rule in such cases. This requires a reversal and a new trial, wherein there may be adduced proof as to the character of the affixation to the realty and the general and contemplated use of the fixtures in connection with the realty.

Irrespective of the correctness of the above conclusion, the judgment in this case is unauthorized. The trial court in this action has found as matter of fact that the plaintiffs took possession of the articles of property in controversy, and took them from the possession of the defendant, and retained them and disposed of them to the use and benefit of plaintiffs; that defendant suffered loss and damage thereby to the amount and value of the property so taken. As a conclusion of law the court found the defendant was entitled to judgment against the plaintiff for such loss and damage. The effect of these conclusions clearly is that plaintiffs converted and disposed of this property, and that the defendant was entitled to a judgment for its value. The judgment entered upon these findings expressly includes the value of such property and provides for the ascertainment of such value.

There is no evidence in the record now before us of any act of conversion by plaintiffs. So far as this record shows, the property remains to-day exactly where it was when the foreclosure action was started. Nothing in this record justifies the inference that plaintiffs have exercised any act of ownership over same, or any part of it. In fact, this action is brought to determine the question of such ownership. Under such circumstances, the findings of fact and law above mentioned are unauthorized and cannot be sustained.

The judgment appealed from should be reversed, and a new trial ordered, with costs to the appellants to abide the event. All concur, except KRUSE, P. J., and ROBSON, J., who dissent.

FOOTE, J. (concurring). On the pleadings the defendant receiver had the affirmative of establishing that the property in question had been expressly, or by necessary implication, determined to be personal property of the Canadaway Fertilizer Company by the judgment in the foreclosure action, and not to have been so affixed to the building as to be a part of the real property involved in that action. On this record I think it cannot be fairly said that the question was so decided. It is true that evidence was given upon both sides upon the question, and that the defendant receiver had alleged in his answer

that certain portions of this property had been affixed to the building for trade purposes and could be removed without injury to the building, and that it was personal property, which should, therefore; be sold separately from the land under the mortgage and the proceeds paid to the receiver; but by the judgment no sale of the mortgaged premises was ordered.  On the contrary, the mortgage and the deed from plaintiffs to the fertilizer company were adjudged fraudulent and void, and the title to the real property revested in the plaintiffs, and plaintiffs were required to restore the consideration they had received.  Thus the receiver was awarded the principal relief which he had asked in his last amended answer.  To be entitled to this relief, it was necessary for the receiver to prove that the claims of the creditors whom he represented could not be satisfied from the assets of the corporation, unless he was awarded that relief, and it seems to be a fair inference from the record that the nineteenth and twentieth findings of fact in the foreclosure action were made to show that the other assets of the corporation were not sufficient to satisfy the claims of creditors.

The nineteenth finding of fact is in substance that claims of creditors amounting to $14,877.09 had been presented to the receiver, "which remain due, owing, and unpaid to the creditors of the said Canadaway Fertilizer Company."  Then follows the twentieth finding, which is "that the total assets of said corporation consist of the real property described in the complaint and certain personal property situated on the premises described in the complaint, being" (then follows a list of enumerated articles, some, but not all, of which are articles which the plaintiffs claim to be fixtures and part of the real estate).  The next finding of fact is that the fertilizer company is insolvent.

Some of the articles named in the twentieth finding are so plainly articles of personal property, such as one 12-foot ladder, one iron wheelbarrow, one ton iron junk, and 700 pounds asbestos, that no court would consider it necessary to make a formal finding as to their character as personal property to prevent being considered a part of the real property.  The inference seems reasonable and proper that the nineteenth, twentieth, and twenty-first findings of fact were made to show the standing and right of the receiver to affirmative relief in the action in behalf of the creditors whom he represented, and not for the purpose of determining, as between the parties, that the articles enumerated in the twentieth finding were not so affixed to the building as to have become part of the real property.  While that question was presented by the pleadings, and might properly have been decided, the question is: Was it in fact decided?  Does it appear from this record that it was decided?  Its decision was not necessary to support the judgment which was ordered.  The title to the real property was restored to the plaintiffs.  The question as to whether any of the articles enumerated in the twentieth finding had become fixtures, and so passed to the plaintiffs, might well have been left to be the subject of another action, if that should become necessary, if the evidence then before the court was not sufficient for the determination of that question.  That the court did not consider it

sufficient may perhaps be inferred by the failure of the trial court to pass upon the question by ruling upon the plaintiffs' twelfth request to find. By that request plaintiffs distinctly called upon the court to rule that certain of the articles in question therein specified—

"are all permanent fixtures annexed to the freehold in a firm and substantial manner, with the intent and purpose of so annexing them, and with the idea of making a complete manufacturing plant; that all of them are a part and portion of the realty."

Although the court marked its ruling upon the previous 11 requests, it made no ruling whatever upon this twelfth request. Under these circumstances, I think the true inference is that the question raised by this twelfth request was intentionally left undecided. If, however, the failure to rule upon this request is equivalent to a refusal to find the facts requested, still such refusal is not equivalent to an affirmative finding to the contrary. Morehouse v. Brooklyn Heights R. R. Co., 185 N. Y. 520, 78 N. E. 179, 7 Ann. Cas. 377.

I am therefore of the opinion that the judgment in the foreclosure action is not res adjudicata upon the question involved here, and for that reason I vote for a reversal of the judgment appealed from, and for a new trial.

KRUSE, P. J. (dissenting). I think the property in question was involved in the action of Lamphere v. Finck, and the ownership thereof, in effect, adjudged to be in the defendant. It was contended in that suit on behalf of Lamphere that the articles in controversy were personal property, belonging to the fertilizer company, of which he had been appointed receiver. If they were not, but were attached to the land by the company so as to become a part thereof, and title thereto passed with the land to the Fincks upon rescission of the contract, the value of the articles which had been so attached by the fertilizer company should have been taken into account in fixing the amount of the recovery against the Fincks in that suit. The receiver was entitled to recover, not only the amount which had been paid upon the purchase price, but the added value of the permanent improvements which the fertilizer company had put upon the land, and which would go back with the land to the Fincks. It does not appear that any such allowance was made, but there is an express finding in the decision that the articles in controversy are personal property belonging to the fertilizer company, which seems to negative any such allowance.

The question arose upon the trial of that suit as to whether the rental value of the premises for the time the fertilizer company had occupied the premises should not be offset against the purchase money which the fertilizer company had paid to the Fincks. It was urged in this court that no such allowance had been made and that the Fincks were entitled thereto. The point was considered by us, but in the absence of any evidence of the rental value of the premises the amount of the recovery was not disturbed. Upon appeal to the Court of Appeals, however, the recovery was reduced. While we are not informed by the decision of that court as to the ground upon which the reduction was made, it is quite probable, from a computa-

tion, that an item of $1,700 for insurance money was taken out of the recovery, and that the interest allowed upon the purchase money paid was also deducted as an offset to the use and occupation of the premises by the fertilizer company; but in making that adjustment the question as to whether the articles in question were to pass to the Fincks or remain the property of the fertilizer company was important, for, if they did actually pass with the land to the Fincks and were put upon the property by the fertilizer company, an allowance should have been made to the receiver therefor, which apparently was not done.

I think the question as to whether the title to the property in question passed to the Fincks or remained in the fertilizer company was involved in the first suit, and that the judgment in effect determined the title to be and remain in the fertilizer company, and that it did not pass to the Fincks with the real estate; and, if that conclusion is correct, the case was correctly disposed of, and the judgment should be affirmed.