## WERNER et al. v. KNOWLTON.

(Supreme Court, Appellate Division, Fourth Department. July 6, 1905.)

1. ATTORNEY AND CLIENT — COMPENSATION — CONTRACT — VALIDITY — QUESTION FOR JURY.

Where the sole issue between the parties was whether a contract for compensation as defendant's attorneys was made, as claimed by plaintiffs, and there was no evidence that it was unfair, or that defendant was incapable of protecting his own interests, the refusal of an instruction that, though the minds of the parties met, yet, in view of the relation of lawyer and client, the jury must be satisfied that it was a fair contract, was not error.

2. SAME—SUBMISSION TO JURY.

Under the express provision of the Code that the compensation of an attorney is governed by agreement, express or implied, which is not re-

strained by law, an attorney expressly fixing the rate of compensation with a client is not compelled, in the absence of evidence of fraud or over-reaching, to submit the validity of the agreement to a jury.

**3. SAME—CONSTRUCTION OF AGREEMENT.**

Defendant, desiring to incorporate the business of the firm of which he was a member, employed plaintiffs, attorneys, to secure parties to advance money to buy out defendant's partner, and agreed that, if the corporation was organized with a capital of $600,000, plaintiffs should have 100 shares to the amount of $10,000, or in the same proportion if organized on any other basis. The corporation was capitalized at $400,000. There was evidence that the assets of the corporation were worth about $400,000, and the jury were entitled to find that the stock, even on a basis of $400,000, was worth par. *Held* that, conceding that through the retention in the treasury of $100,000 of the stock the capital stock amounted to $300,000 only, defendant was not injured by a judgment allowing plaintiffs to recover on a basis of being entitled under the agreement to 66⅔ shares of stock out of a total capitalization of $400,000.

Appeal from Trial Term, Monroe County.

Action by Christopher C. Werner and another against Mark D. Knowlton. From a judgment for plaintiffs and from an order denying his motion for a new trial, defendant appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Horace McGuire, for appellant.
Albert H. Harris, for respondents.

HISCOCK, J. The plaintiffs are a firm of practicing attorneys in the city of Rochester, and they instituted this action for the purpose of recovering the value of professional services claimed to have been performed for the defendant. They based their right to recovery upon an express contract for compensation. This contract was denied by the defendant, and the substantial issue litigated upon the trial thus presented.

We think that no such error was committed upon the trial either by the learned trial justice or by the jury as calls for a reversal of the judgment. In brief, the jury were entitled to find from the evidence the following facts: Defendant was engaged with one Beach in a manufacturing business, and, having become dissatisfied with his partnership relations, conceived the idea of buying him out, which later led to the plan of forming a corporation to take over the business of the partnership. Without making a full disclosure in the first instance, defendant talked with the plaintiff Harris about the matter, and the sum of $25 for each consultation was fixed by the latter as a compensation for services. Later, when it was deemed necessary that the attorney should secure parties to advance $100,000 to be used in buying out defendant's partner, and for which advance stock in the proposed corporation was to be issued, it was agreed that these efforts of the attorneys should not be included in the compensation of $25 per consultation. After the attorney had procured parties to advance $100,000, the plan was tentatively considered of organizing a corporation to take over the partnership business with a capital stock of $600,000, of which $100,000 preferred and $50,000 of common stock were to be issued to the par-

ties advancing the money, and the balance of the stock issued $10,-000 to the plaintiffs and the remainder to Mr. Knowlton, or under his direction. After this, as claimed by plaintiffs, the agreement relied upon was made. The defendant said to the plaintiff Harris, amongst other things:

"I am going to organize a corporation to carry on the business, and, no matter how I organize it, I say to you that I will give you on the same basis ten thousand dollars, or, if it is organized on any other basis, in the same proportion, if you will release me from any further claim you have against me."

Plaintiffs were directed by defendant to arrange with the parties who had been secured to advance the sum of money indicated. In the end defendant arranged to borrow the necessary money from a bank, and through another attorney organized a corporation with a capital of $400,000, and took over the business in question.

While much of the evidence tending to support the foregoing facts was contradicted by defendant, a question of fact was presented for the jury, and their verdict cannot be said to be so against the weight of evidence that it should be set aside. This being so, we think that defendant's agreement may be fairly considered as a promise to pay plaintiffs in full for all of the services which they had rendered or might render in connection with the formation of the company $10,000 in stock upon a proposed capitalization of $600,-000, or at that rate, and that the trial justice was justified in permitting the jury to act upon that theory.

We have thus briefly discussed the facts in order the more intelligently to consider two questions of law which are raised by the learned counsel for the appellant. At the conclusion of the charge defendant's counsel requested to have the jury further instructed "that, in order to render a verdict for the plaintiffs the jury must be satisfied that the minds of the parties met at the conversation in Mr. Harris' library after the meeting with Mr. Stecher and Mr. Van Berg [the time when the contract in question is claimed to have been made], and that the burden was upon the plaintiff to show that their minds did so meet." This was so charged. He then further requested an instruction "that, even if the minds of the parties met upon this contract at the conversation in the library, in view of the relation of lawyer and client the jury must be satisfied that the contract was a fair contract." This was refused, and it is claimed error thereby committed. The principles of law which impose upon a party seeking the benefits of a contract made between an attorney and client the burden, under certain circumstances, of establishing the due execution of a fair and equitable contract, are entirely familiar. But we do not believe that any rule has been established which made it error to refuse the charge here requested. The sole issue between the parties upon the trial was whether the contract was in fact made as claimed by plaintiffs. There was no suggestion based upon evidence that, if made, it was unfair, or that the plaintiff Harris had overreached the defendant. While the relation of attorney and client did exist at the time the alleged contract was made, still in reference to the amount of compensation to be paid each party necessarily acted for his own in-

terest, and the evidence does not permit any inference that the defendant was not capable of sufficiently protecting himself upon this point. In the case of Brock v. Barnes, 40 Barb. 521, called to our attention, where the court enforced the rule that the burden laid upon an attorney to show that the contract with his client for compensation for services was fair, and that the client acted freely and understandingly, there were various circumstances which made the basis for the application of such principle. The client was dead, and the contract had been obtained from him when he was old and feeble, and outside of the writing itself there was no sufficient evidence to sustain a claim for the compensation which the attorney demanded. In these respects the case was very different from the one at bar. Further than this, under the first request which was charged it was necessary for the jury to find that the minds of the parties had fairly met upon this contract, and therefore the second request, construed in connection with the first one, could only mean that the plaintiffs could not recover unless the jury approved of the rate of compensation fixed, and would have been willing upon a quantum meruit to allow the compensation which had been expressly agreed upon by the parties. We do not think that an attorney who expressly fixes the rate of compensation with a client, in the absence of some evidence of fraud or overreaching, is compelled to submit the validity and binding force of his agreement to any such test as this. The Code expressly provides that "the compensation of an attorney or counsel for his services is governed by agreement, express or implied, which is not restrained by law." If the contention of the counsel for the appellant upon the facts as developed in this case is correct, it would be entirely useless for an attorney to make an agreement fixing his compensation. Any agreement which he and his client might make fixing for the protection of both the value of the services to be rendered would always be subject to revision and modification by a court or jury, which might entertain a different idea of values.

Plaintiffs were allowed to recover upon a basis of being entitled under their agreement to 66⅔ shares of stock out of a total capitalization of $400,000. This preserved the same proportion between their share of stock and the total capitalization which 100 shares of stock bore to the total capitalization of $600,000 as fixed in the original agreement. As a matter of fact, $300,000 of stock was issued to the copartnership in full for its assets, and the other $100,000 of capital stock was retained by the corporation itself in the treasury. It is therefore urged that the recovery of plaintiffs should have been limited to a basis of 50 shares out of $300,000 of capital stock, and that it was error to allow them to recover for the other 16⅔ shares on the basis of a capitalization of $400,000. Even if it be assumed that through the retention in the treasury of $100,000 of stock the corporation is to be regarded as having been organized with a capital of only $300,000, we do not see that defendant has been injured by the alleged mistake complained of. Without objection or exception the trial judge permitted and instructed the jury to find the money value of the 66⅔ shares of

stock which plaintiffs claimed to be due to them, and the jury fixed this value at par upon the basis of the outstanding capital being $400,000. Concededly $300,000 of stock was given to the copartnership for its assets, and, so far as appears, that was all that was received for the stock. There was evidence that the tangible assets of the copartnership were worth about $400,000, and that its earning capacity and resultant good will were very great, so that the jury were fairly entitled to find that the stock, even upon a basis of $400,000, was worth par. If the court was wrong in assuming that $400,000 of stock had been issued, and as a matter of fact only $300,-000 of it had been issued, then in the latter case the value per share would have been sufficiently larger to make the amount to which plaintiffs were entitled the same. That is, if the stock to which plaintiff was entitled was worth par upon a basis of an outstanding capital of $400,000, it would be worth par and one-third upon a basis of an outstanding capital of only $300,000, and the money value of 50 shares in the latter case would be the same as the money value of 66⅔ shares of stock in the case of the larger capitalization. We think that the judgment and order should be affirmed, with costs.

Judgment and order affirmed, with costs. All concur.