(Surrogate's Court, Jefferson County. February 4, 1916.)

1. EXECUTORS AND ADMINISTRATORS ⟨key⟩35—REVOCATION OF LETTERS—ALLOWANCE OF EXPENSES—STATUTE.

Under Code Civ. Proc. §§ 2555, 2753, providing that revocation of an administrator's letters does not affect the validity of any act, within the power conferred by law upon him, done before service of the citation where the other party acted in good faith, or done after service, before entry of the decree, where his powers with respect thereto were not suspended by the service and he is not liable for such an act done in good faith, and that, upon settlement of an administrator's accounts, the surrogate must allow him his just, reasonable, and necessary expenses actually paid by him, where the letters of an administrator were revoked, his act, prior to revocation, in paying an attorney's fee for services in an action against a railroad to recover for death of his decedent, was not open, on settlement of his accounts, to the objections that he had no authority or legal warrant to make the payment, that he was not the legal administrator, that he could not bind the estate for services of counsel, and that he was personally liable for the services.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 227–262; Dec. Dig. ⟨key⟩35.]

2. ATTORNEY AND CLIENT ⟨key⟩147—COMPENSATION—CONTRACT—STATUTE.

Under Code Civ. Proc. § 66, providing that the compensation of an attorney is governed by agreement, express or implied, unrestrained by law, where attorneys rendered services to the administrator of a deceased Italian in suing a railroad for the death pursuant to a general contract between the administrator, the Italian consular agent, and his attorney, applicable to all cases arising in the agent's jurisdiction in which he should receive letters of administration upon the estates of deceased Italians, whereby the agreed fee was 40 per cent. of the damages recovered, such a fee was not excessive, in the absence of fraud or improper or undue advantage taken of the consular agent as administrator.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 351; Dec. Dig. ⟨key⟩147.]

⟨key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. EVIDENCE ⬅⬉523—EXECUTORS AND ADMINISTRATORS ⬅⬉506—EXPERT EVI-
   DENCE—VALUE OF LEGAL SERVICES.

   In proceedings for final judicial settlement of an account as an admin-
   istrator, expert opinion testimony of members of the bar that an attor-
   ney's fee, paid by the administrator for services in prosecuting an action
   against a railroad for decedent's death, was excessive, was competent,
   where the attorney's claim for the fees was on a quantum meruit, but it
   would be otherwise where the fees are based on an express contract.

   [For other cases, see Evidence, Cent. Dig. § 2331; Dec. Dig. ⬅⬉523;
   Executors and Administrators, Cent. Dig. §§ 2169–2177; Dec. Dig. ⬅⬉506.]

4. EXECUTORS AND ADMINISTRATORS ⬅⬉296—FINAL DISTRIBUTION—STATUTES.

   Where the estate is ready for final settlement and distribution on settle-
   ment of the proceedings of an administrator whose letters have been re-
   voked, the distribution will be made at the same time, as authorized by
   Code Civ. Proc. §§ 2555, 2734, in accordance with section 2725.

   [Ed. Note.—For other cases, see Executors and Administrators, Cent.
   Dig. §§ 1185–1198; Dec. Dig. ⬅⬉296.]

In the matter of the estate of Carmine D'Adamo, deceased. On pe-
tition by Germano P. Baccelli for final judicial settlement of his pro-
ceedings as administrator. Decree ordered in accordance with the
opinion.

See, also, 159 App. Div. 40, 144 N. Y. Supp. 429.

Letters of administration issued upon the estate of above-named decedent
to Germano P. Baccelli, Italian consular agent, on or about December 12, 1912,
were revoked by order of the surrogate dated July 28, 1914 (pursuant to deci-
sion of Court of Appeals in Re D'Adamo, reported 212 N. Y. 214, 106 N. E.
81, L. R. A. 1915D, 373), and letters of administration were issued on that
day to Giovanni D'Adamo and Fred W. Mayhew. On the 1st day of October,
1914, the said Baccelli filed his account and petition for final judicial settle-
ment of his proceedings as such administrator, and thereupon a citation was
issued, directed to the widow and daughter of decedent, residing in Italy,
the consul general of Italy, and the new administrators, requiring them to
attend such settlement on the 4th day of November, 1914.

The account as filed shows that the administrator, Baccelli, received on
June 9, 1913, the sum of $1,800 in settlement of an action brought by him
against the New York Central & Hudson River Railroad Company; that he
had paid Countryman, Nellis, Du Bois & McDermott, his attorneys, for legal
services in investigating facts relative to death of deceased, bringing action,
and negotiating a settlement of same, $719.19, and $2.02 disbursements in the
action, $1.48 other necessary disbursements, and $78 funeral expenses, amount-
ing in all to $800.69, leaving a balance for distribution of $999.31. Later upon
the hearing the account was amended by adding two items of interest, amount-
ing to $40.81, making the total amount for distribution, $1,041.12.

The new administrators filed objections to the account as to the item paid
for attorney's fees upon the ground: (a) That said Baccelli had no authority or
warrant of law to make such payment; (b) that said Baccelli was not the le-
gal administrator; (c) that said payment was excessive; (d) that said
Baccelli could not legally bind the estate for services of counsel; (e) that
Baccelli is personally liable for the value of the services rendered him by his
attorney.

Other items were objected to, but the above are the only objections urged
upon the trial, which was had in February, 1915. The case has only recently
been submitted and briefs filed.

Countryman, Nellis, Du Bois & McDermott, of Albany (F. B. Pitcher,
of Watertown, of counsel), for administrator Baccelli.

Gilbert S. Woolworth, of Watertown, for administrators Mayhew
and another.

D. M. Cosgrove, of Watertown, special guardian, etc.

ATWELL, S. [1] All of the objections raised, except the one (c) that the payment of attorney's fees was excessive, are sufficiently answered by the provisions of the Code, § 2555 and § 2753. The former provides that:

"The revocation does not affect the validity of any act, within the powers conferred by law upon the administrator, * * * done by him before the service of the citation, where the other party acted in good faith, or done after the service of the citation, and before entry of the decree, where his powers with respect thereto were not suspended by service of the citation, * * * and he is not liable for such an act done by him in good faith."

The latter section provides that upon the settlement of the accounts of an administrator "the surrogate must allow to him his just, reasonable, and necessary expenses actually paid by him." No allegation of bad faith or lack of good faith is made.

[2] There remains, then, only the question raised by the objection that the amount paid for attorney's services was excessive. Upon the trial evidence was given upon the theory that the administrator could only be allowed for the value of the services rendered by the attorneys upon a quantum meruit, and expert witnesses were called, who testified in answer to hypothetical questions as to the value of such services. This seems to have been an erroneous theory, as the services were rendered pursuant to a general contract existing between the consular agent and his attorney, made in 1911, applicable to all cases arising in his jurisdiction, in which he should receive letters of administration upon the estates of deceased Italian subjects. Morehouse v. Brooklyn H. R. Co., 123 App. Div. 680, 108 N. Y. Supp. 152, affirmed 195 N. Y. 537, 88 N. E. 1126.

The contract was proven by correspondence between the consular agent, Baccelli, and his attorneys, covering a period between May 18 and October 11, 1911. These letters show that the compensation agreed upon should be 40 per cent. of the damages recovered, either after trial or upon settlement. The letters comprising such correspondence were stipulated into the case by counsel by stipulation dated December 22, 1915.

"The statute expressly permits an attorney to regulate the amount of his compensation by contract with his client, which is unrestrained and unlimited by law, and such an agreement cannot be interfered with and held illegal until the question has been fully and fairly investigated and the facts relating to the transaction plainly established by a trial. The statute conferred upon the parties the right to make the contract, and conferred upon the court no authority to make it for them. If, however, upon a proper examination of the appellant's claim, it should be found that the agreement between himself and his client was induced by fraud, or that the compensation provided for was so excessive as to evince a purpose to obtain improper or undue advantage, the court may correct any such abuse." Matter of Fitzsimons, 174 N. Y. 15, 66 N. E. 554.

This rule has been upheld in the following cases, where contracts upon a contingent basis have been involved: Morehouse v. Brooklyn H. R. Co., 185 N. Y. 520, 78 N. E. 179, 7 Ann. Cas. 377; Ransom v. Ransom, 147 App. Div. 835, 133 N. Y. Supp. 173; Morehouse v. Brooklyn H. R. Co., 123 App. Div. 680, 108 N. Y. Supp. 152 (2nd trial); Ransom v. Cutting, 112 App. Div. 150, 98 N. Y. Supp. 282, af-

firmed 188 N. Y. 447, 81 N. E. 324; Weeks v. Gattell, 125 App. Div. 402, 109 N. Y. Supp. 977; Murray v. Waring Hat Mfg. Co., 142 App. Div. 514, 127 N. Y. Supp. 78.

The contestant introduced no proof, and there is no evidence that there was any fraud, or improper or undue advantage taken of the administrator. Unless there is evidence of fraud, or undue advantage taken of the administrator, the court cannot, under the doctrine laid down by the Court of Appeals in Matter of Fitzsimons, supra, alter or change the contract.

[3] The only evidence offered by the contestant was the expert opinion of certain members of the bar that such charge was excessive. That evidence would be proper and competent if the claim for the fees was based upon quantum meruit theory. The rights of the attorneys in the case are based on an express contract. In the language of Morehouse v. Brooklyn H. R. Co., 123 App. Div. 680, 108 N. Y. Supp. 152, on the new trial ordered by the Court of Appeals:

"All of the testimony offered by the defendant consisted of a hypothetical question to a leader of our bar, which did not embrace all of the services detailed by the plaintiff, and which asked merely for the value of the services described therein. One very properly may demand a larger compensation if it is to be contingent, not certain. We would not be justified to disturb the finding of fact [citing cases]. The client did not discharge his attorney during the litigation, so as to relegate the attorney to quantum meruit."

Along the same line the court, in Werner v. Knowlton, 107 App. Div. 158, 94 N. Y. Supp. 1054, an action to recover for value of professional services fixed by express contract, said:

"We do not think that an attorney, who expressly fixes the rate of compensation with a client, in the absence of some evidence of fraud or overreaching, is compelled to submit the validity and binding force of his agreement to any such test as this [on the basis of quantum meruit]. Section 66 of the Code of Civil Procedure expressly provides that 'the compensation of an attorney or counselor for his services is governed by agreement, express or implied, which is not restrained by law.' If the contention of the counsel for the appellant upon the facts as developed in this case is correct, it would be entirely useless for an attorney to make an agreement fixing his compensation. Any agreement which he and his client might make, fixing for the protection of both the value of the services to be rendered, would always be subject to revision and modification by a court or jury, which might entertain a different idea of values."

In view of these authorities, and upon the proofs herein it seems to me the amount paid by the administrator, or to his attorneys, must be allowed, and objections thereto overruled.

[4] It appearing that the estate is ready for final settlement and distribution, I can see no reason why such distribution should not be made at the same time, as authorized by sections 2555 and 2734, in accordance with section 2725 of the Code of Civil Procedure. The decree may therefore provide for distribution to the next of kin, after deducting the expense of the accounting as follows: To Grazia Pasoncchi D'Adamo, widow, one-third; Chiara D'Adamo, daughter, two-thirds thereof. These parties being Italian subjects residing in Italy, their respective shares may be paid over to G. Fara Forni, consul general of kingdom of Italy, residing in New York City, for them.

Matter of Tartaglio, 12 Misc. Rep. 245, 33 N. Y. Supp. 1121; Matter of Davenport, 43 Misc. Rep. 573, 89 N. Y. Supp. 537.

Decree ordered accordingly.