In the Matter of the Judicial Settlement of the Account of JAMES S. MENG, Executor, etc., of HENRY BISCHOFF, Deceased, of the Fund Recovered from EMIGRANT INDUSTRIAL SAVINGS BANK as Damages for Negligence Causing the Death of Testator, Pursuant to Code of Civil Procedure, Sections 1902 to 1905.

ELIZABETH BISCHOFF, Appellant, Respondent; JAMES S. MENG, Individually and as Executor, etc., Respondent, Appellant.

MORGAN J. O'BRIEN, JR., Special Guardian for ANNIE L. MENG and WINIFRED C. MENG, Respondent.

First Department, May 2, 1919.

Negligence — who entitled to share in recovery in action for negligence causing death — Code of Civil Procedure, section 1903, construed — constitutional law — executors and administrators — effect of executory contracts by executors — right of executor upon accounting to allowance for sum paid under contingent fee agreement with attorney to prosecute claim for negligence causing death of testator — burden of proof — discretion of surrogate to fix reasonable compensation.

Where a testator was survived by a widow and two grandchildren, the children of a deceased daughter, the widow is entitled by virtue of section 1903 of the Code of Civil Procedure, as amended, to the whole amount

recovered by the executor of her husband in an action for negligence resulting in his death, after payment of the reasonable expenses of the action.

The word " children " in the 1911 amendment of section 1903 of the Code of Civil Procedure is to be construed as not including grandchildren and said amendment is void as being violative of section 18 of article 1 of the State Constitution.

Executors, administrators or trustees cannot by their executory contracts, although made in the interest and for the benefit of the estate they represent, if made upon a new and independent consideration, bind the estate and thus create a liability not founded upon the contract or obligation of the testator. Such a contract is regarded as the personal obligation of the executor until it has been allowed upon the judicial settlement of his accounts.

While as between the executors, administrators or trustees and the persons with whom they contract, the latter may rely upon the contract, the beneficiaries are not concluded by the acts of the personal representatives, but the propriety of the charge and the liability of the estate therefor must be determined in the accounting of the personal representative. The estate cannot be thus depleted without an opportunity for the beneficiaries to be heard either by making an objection to the account or in a suit in equity, under special circumstances, to which the beneficiaries are necessary parties.

The above rule is applicable to a contingent fee agreement by an executor with an attorney to prosecute a claim for the negligent causing of the death of his testator.

Where an executor, having made a contingent fee agreement with an attorney to prosecute a claim for the negligent causing of the death of his testator, petitions the Surrogate's Court to settle his account the burden rests upon him, objections having been made, to show that his contract was reasonable and that he should be allowed the amount paid.

The discretion of the surrogate in fixing the amount of such payment by an executor should not be interfered with merely because the executor and attorney saw fit to make a contingent fee agreement for a greater amount.

Shearn, J., dissented in part, with opinion.

Appeal by Elizabeth Bischoff, widow and contestant herein, from a decree of the Surrogate's Court of the county of New York, entered in the office of said Surrogate's Court on the 2d day of May, 1917, except from the provision of said decree adjudicating that a certain contract between the executor and his attorneys was unreasonable and unenforcible and except from the provisions which direct payments to herself or her attorneys.

Appeal by the petitioner, James S. Meng, individually and as executor, from so much of said decree as adjudicates that

the reasonable value of services of the attorneys retained by him was $15,500, and from other stated provisions of the decree, with notice of intention to bring up for review an order entered in the office of said court on the 10th day of April, 1917. The decree settled the executor's account herein.

*Samuel Seabury* of counsel [*Seabury, Massey & Lowe,* attorneys], for the appellant James S. Meng, as executor, etc.

*Francis M. Scott* of counsel [*Scott, Gerard & Bowers,* attorneys], for the appellant Elizabeth Bischoff.

*Morgan J. O'Brien, Jr.,* special guardian, respondent.

PAGE, J.:

I concur in Mr. Justice SHEARN's opinion in so far as it relates to the share of the beneficiaries in the recovery, but I dissent from his conclusion as to the attorney's fees. It has been the well-settled law of this State that executors, administrators or trustees cannot by their executory contracts, although made in the interest and for the benefit of the estate they represent, if made upon a new and independent consideration, bind the estate and thus create a liability not founded upon the contract or obligation of the testator. (*Myer* v. *Cole,* 12 Johns. 349; *Demott* v. *Field,* 7 Cow. 58; *Ferrin* v. *Myrick,* 41 N. Y. 315; *Austin* v. *Munro,* 47 id. 360, 366; *Matter of Van Slooten* v. *Dodge,* 145 id. 327; *Parker* v. *Day,* 155 id. 383; *O'Brien* v. *Jackson,* 167 id. 31, 33; *Dodd* v. *Anderson,* 197 id. 466, 471; *Smith* v. *Peyrot,* 201 id. 210, 215.) Such a contract is regarded as his personal obligation until it has been allowed upon the judicial settlement of his accounts. (*Dodd* v. *Anderson, supra.*) While, as between the executors, administrators or trustees and the persons with whom they contract, the latter may rely on the contract, the beneficiaries are not concluded by the acts of the personal representatives, but the propriety of the charge and the liability of the estate therefor must be determined in the accounting of the personal representative. The estate cannot be thus depleted without an opportunity for the beneficiaries to be heard, either by making an objection to the account or in a suit in equity, under special circumstances, to which the beneficiaries are

necessary parties. This rule has been applied to the agreements between an attorney and an executor. (*Parker* v. *Day, supra.*) I can see no reason why the rule should not be applied in this case.

The executor made a contingent fee agreement with the attorney to prosecute a claim for the negligent causing of the death of his testator. Had the agreement been made to prosecute any other claim there would have been no question but that it would have been his personal obligation, and the reasonableness of the charge against the estate would have been open to the determination of the surrogate upon the accounting. Mr. Justice SHEARN is of opinion that a different rule does apply to the executor when he is accounting for the fund recovered as damages for death of the testator, that in such a case the executor or administrator can make a contract with the attorney which binds the estate and precludes an inquiry by the surrogate as to the reasonableness of the charge, unless the terms thereof are unconscionable. Two cases are cited as authority for this position (*Lee* v. *Van Voorhis*, 78 Hun, 575; affd., on opinion below, 145 N. Y. 603; and *Matter of Atterbury*, 222 id. 355.) In my opinion, neither of these cases sustains the contention. In the first of these the action was brought by the administratrix to have a contract for a contingent fee made by her with an attorney, in an action under section 1902 of the Code of Civil Procedure, declared null and void. This presents an entirely different question for determination from that involved in the instant case. It has always been held that as between the personal representative and the third person an executory agreement for the rendition of services is valid and binding upon the personal representative personally. The question as to the liability of the estate and the effect of the contract, as against the objection of the beneficiaries, was not involved in that case.

At the time that decision was rendered the latter part of section 1903 of the Code of Civil Procedure read: " But the plaintiff may deduct therefrom the expenses of the action, and his commissions upon the residue; which must be allowed by the surrogate, upon notice, given in such a manner and to such persons, as the surrogate deems proper." There was no provision for an accounting by the executor or adminis-

trator for the money received as the result of such an action. In 1904 (Laws of 1904, chap. 515) the section was amended by inserting as one of the items that the plaintiff might deduct " the reasonable funeral expenses of the decedent; " and in 1911 (Laws of 1911, chap. 122) the section was further amended by the insertion of the word " reasonable " before expenses. The Court of Appeals has held that this amendment did not alter the existing law, as the word "reasonable" was always implied. (*Matter of Atterbury, supra,* 360.) It did make certain that which certainly was open to argument, that there was a discretion in the surrogate, notwithstanding the mandatory " must," to determine whether the expenses which had been deducted were reasonable; and further it throws light on the legislative intent as disclosed in subsequent legislation. In 1915 (Laws of 1915, chap. 641) this portion of section 1903 was amended to read as follows: " The reasonable expenses of the action, or settlement, the reasonable funeral expenses of the decedent, and the commissions of the plaintiff or representative, upon the residue may be fixed by the surrogate, upon notice, given in such a manner and to such persons. as the surrogate deems proper or upon the judicial settlement of the account of the plaintiff, or representative, and may be deducted from the recovery." In 1914 (Laws of 1914, chap. 443) the provisions of the Code of Civil Procedure relating to Surrogates' Courts were in many particulars substantially amended, and a new section was enacted providing for a judicial settlement of the accounts of executors or administrators where the proceeds of a judgment are ready to be paid over, and where such recovery is not a part of the estate of the deceased but goes by special provision of law to designated persons or classes of persons. (§ 2720.) This was the first provision of law allowing the judicial settlement of the accounts of an executor or administrator with respect to the fund received as a result of an action for the negligent causing of death. Theretofore the matter as to the expenses that had been deducted was to be summarily determined on motion, notice of which was to be given in such a manner and to such persons as the surrogate deemed proper. Thereafter it was to be instituted by petition and the issuance of a citation to all persons interested, and the surrogate was to

take and settle the account and direct payment to the parties entitled according to their respective rights and interests.

The amount of the judgment in the action against the Emigrant Industrial Savings Bank was paid to the executor on the 8th day of December, 1915, when the foregoing provisions of the Code of Civil Procedure were in effect. And this proceeding was instituted pursuant to section 2720 to have a judicial settlement of the account of the executor as to this particular fund. In my opinion this does not change the law so far as the liability of the executor to the estate is concerned, but shows the intent of the Legislature, that the same rules are applicable to the accounting of an administrator or executor upon the distribution of a fund realized by means of an action for negligently causing death. Section 1903 as it now stands gives the personal representative the right to have the amount of the expenses fixed in advance by the surrogate upon motion or upon the judicial settlement of the account. The executor, having already made his agreement with the attorneys, petitioned the Surrogate's Court to settle his account and when objection was made, the burden rested upon him to show that his contract was reasonable and that he should be allowed the amount paid. The surrogate referred the matter to Hon. Charles F. Brown, who was peculiarly qualified by his long and distinguished service on the bench to deal with the question; he has fixed a compensation that he found to be reasonable; the surrogate has confirmed that finding. The discretion certainly was vested in the surrogate, and with his decision we should not interfere, except for the most cogent reason. I find no justification for interfering merely because the executor and attorney saw fit to make a contingent fee agreement for a greater amount.

In *Matter of Atterbury* (*supra*) the agreement between the attorney and administratrix expressly provided that the attorney should accept as compensation for his services " a reasonable amount wholly contingent upon a recovery and the amount thereof." The attorney obtained from the Supreme Court an order to show cause, under section 475 of the Judiciary Law (Consol. Laws, chap. 30; Laws of 1909, chap. 35), why an order should not be made deter-

mining the amount of and enforcing the payment of his
attorney's lien. The administratrix, through her attorney,
consented to the amount being fixed. Application was made
to the surrogate for leave to pay the amount. The surrogate
questioned the validity of the order made by the Supreme
Court and fixed a smaller compensation, which he authorized
the administratrix to pay. Thereupon the attorney applied
to the Supreme Court and obtained an order directing the
railroad company to pay the fee fixed by that court directly
to him. A motion was then made by the guardian of the
property of the infants to vacate the two orders of the
Supreme Court. This motion was denied, and an appeal
taken to this court from all three orders of the Supreme
Court. We dismissed the appeal from the first two orders,
holding that as the guardian had not had notice of the appli-
cation for these orders, its proper remedy was to move to
vacate, as it had done; and we reversed the third order on
the ground that the surrogate had the exclusive right, in the
first instance, to fix the fee, and granted the motion to vacate
the two orders. (See 179 App. Div. 648.) The Court of
Appeals, however, decided that the Supreme Court had
jurisdiction to fix and enforce an attorney's lien, and that
this jurisdiction had not been taken away by the amendment
of 1915 to section 1903 of the Code of Civil Procedure,
but that gave a concurrent jurisdiction to the Surrogate's
Court. Therefore, when the Supreme Court had acted in
the first instance, the surrogate was bound by the order and
could not disregard it. It was further held that the proper
remedy was by direct appeal from the first two orders of the
Supreme Court, and not by a motion to vacate them, and as
these appeals were dismissed by the Appellate Division, this
action of the Supreme Court was not brought before them.
This case is far from being an authority for the proposition
that the agreement of the attorney and the executor and
administrator was binding upon the surrogate or the bene-
ficiaries. In fact the court said: " Nor do we understand
that either before or after 1911 any jurisdiction was conferred
upon the surrogate to determine disputes as to compensation
between attorneys and clients. The surrogate acted on the
accounting between the executor or administrator and the

person on whose behalf the action was brought. If on such an accounting it appeared that the amount paid an attorney was reasonable, it was to be allowed. If it was excessive, the executor or administrator bore the loss. But if a court of competent jurisdiction had determined the amount of the lien to which the attorney was entitled, then the surrogate was bound by that finding." (P. 360.)

Therefore, as in this case no court had passed upon this contract the matter was open for determination by the surrogate. I am of opinion that the decree appealed from was right and should be affirmed, with costs to the special guardian, respondent, payable out of the fund.

CLARKE, P. J., DOWLING and SMITH, JJ., concurred; SHEARN, J., dissented in part.

SHEARN, J.:

On March 28, 1913, Henry Bischoff, then a justice of the Supreme Court, died as a result of injuries sustained in an elevator in a building owned by the Emigrant Industrial Savings Bank in the city of New York. He was survived by a widow and by two grandchildren, the children of a deceased daughter. By his will he appointed the accountant sole executor. The executor employed a firm of attorneys to prosecute an action against the savings bank to recover damages for the wrongful death of the testator, the retainer being upon a contingent fee basis of one-third of the recovery. The action resulted in a verdict of $100,000, which was reduced by the trial judge to $70,000, and as reduced accepted by the executor pursuant to the written request of the widow. The judgment entered on the reduced verdict was affirmed, and when it was paid on December 8, 1915, amounted, with interest and costs, to the sum of $82,036.70. One-third of that amount the executor paid to his attorneys. Thereupon the executor filed his account and instituted this proceeding for its judicial settlement. Objections were filed by the widow and by the special guardian of the infant grandchildren. The two principal questions raised by the objections were: (1) As to who was entitled to share in the fund; and (2) as to what sum or sums should be allowed to the executor for the

costs and expenses of the action brought by him. The first question presented a controversy between the widow and the infants, the former claiming that she was entitled to receive the whole amount recovered after payment of the reasonable expenses of the action, by virtue of section 1903 of the Code of Civil Procedure, as amended by chapter 122 of the Laws of 1911, which was the statute in effect when Judge Bischoff died. It was contended on behalf of the infants that the word " children " as used in the Code amendment of 1911 should be construed as though it read " descendants " so as to include grandchildren, and that otherwise the amendment was unconstitutional and void, as being violative of section 18 of article 1 of the Constitution of this State; and that consequently the widow was entitled to one-third of the fund and the grandchildren to two-thirds thereof, after deduction of expenses. The surrogate sustained the contention of the infants, construing the word " children " to include grandchildren. The second question presented a controversy between the executor on one hand and the widow and the infants on the other. The contention of the executor was that the contract of employment, whereby the services of his attorneys were retained and pursuant to which they were rendered, was a lawful, proper and reasonable contract and that the agreed compensation was conclusive upon the surrogate in the absence of any attack upon the contract for any reason other than that, as it worked out, the compensation paid exceeded the reasonable value of the services rendered. The surrogate declined to be bound by the contract, and appointed the Hon. Charles F. Brown referee to determine what was a reasonable fee for the services actually rendered. The referee found said sum to be $15,500, including an item of $500 for services in preparing and having allowed the account. The surrogate sustained the finding of the referee.

The first question to be considered is the proper construction of section 1903 of the Code of Civil Procedure, as amended in 1911. The concrete question is whether the word " children " is to be construed in its primary sense as meaning children only, or whether it is to be so construed as to include grandchildren or other descendants. There is no dispute but that the rule is that the word " children " is always con-

sidered to have been used in its primary sense, and to exclude grandchildren, unless there be something in the document in which it occurs, whether statute, will or contract, which requires a different construction. (*Matter of Truslow*, 140 N. Y. 599.) Turning to the statute, we find that the first part of section 1903 provides that the damages recovered " must be distributed by the plaintiff, or representative, as if they were unbequeathed assets," that is to say, as if they were a part of the decedent's estate as to which he died intestate. This refers very clearly to section 98 of the Decedent Estate Law (Consol. Laws, chap. 13; Laws of 1909, chap. 18), which provides that personal property not bequeathed " must be distributed to his widow, children, or next of kin, in manner following," *i. e.*, " 1. One-third part to the widow, and the residue in equal portions among the children, and such persons as legally represent the children if any of them have died before the deceased." Thus we see that the statute, regulating generally the distribution of unbequeathed assets, carefully uses the word " children " in its primary sense. The same use of the word appears in other parts of section 98. Therefore, but for the limiting words of section 1903 of the Code, as amended by the act of 1911, and in force when Judge Bischoff died, the damages in the present case would be distributed one-third to the widow and two-thirds to the grandchildren, not because the latter are comprised within the term " children " but because they would answer the description of " such persons as legally represent the children if any of them have died before the deceased."· It is fair to assume that the Legislature intended to use the word " children " when it amended section 1903 of the Code, in 1911, in the same sense and with the same meaning that it used that word in the Decedent Estate Law, that is, in its primary sense. If the Legislature in framing the act of 1911 had intended to limit the distribution in a case like the present one to grandchildren, as well as children, it naturally would have adopted the language of section 98 of the Decedent Estate Law, and would have provided that in case a decedent left a wife or husband, but no children, the proceeds ·should be divided between the surviving wife or husband and " such persons as legally represent the children

if any of them have died before the deceased." Unless the Legislature intended to change the law and distribute the whole fund to the widow where the deceased left no children, it did an idle thing in amending the section in 1911, for if it was intended to divide the fund in such case between the widow and such persons as legally represent children who have died before the deceased, that was already provided for. The learned surrogate was of the opinion, and it was forcefully argued upon this appeal, that when the cause of action was created under Lord Campbell's act in 1846 (9 & 10 Vict. chap. 93), and in this State by chapter 450 of the Laws of 1847, grandchildren were included within its benefits; that this was the settled policy of the State for sixty-four years preceding the amendment of 1911; and, accordingly, the Legislature should not be deemed to have changed the rule by the amendment unless an intent to do so clearly appears from the enactment. It is then urged that it is apparent that no such change was intended when it is considered that under the amended section grandchildren are included under the term " children " if at the time of the death of their grandfather one of their uncles or aunts survived. It is further urged that if the Legislature, by the amendment, intended to disrupt the previous scheme of the statute it would have used apt words in order to exclude also orphan grandchildren in case an uncle or aunt survived, because it is not to be supposed that it was ever the intention of the Legislature to include grandchildren if a child of the decedent survived him, but to exclude them merely because no child survived. This last argument overlooks the fact that if there were any surviving children, whether one or more, and irrespective of there being any issue of deceased children, the widow was only entitled, both before and after the amendment, to one-third of the fund, and in such case it was natural and proper for the Legislature to prescribe an equal distribution of the balance between the children and representatives of deceased children, for it would seem obviously unfair that where one child received a share of the fund the children of a deceased child should be cut off. Where, however, there were no children at all, and, therefore, no question of fairness of distribution between children and descendants of deceased children, the question

First Department, May, 1919.      [Vol. 188.

was obviously presented to the Legislature: What was a proper distribution as between the surviving widow and grandchildren? The Legislature evidently considered that as between grandchildren, having no claim upon the grandparent for support (*Matter of Tone*, 186 App. Div. 361), and the widow, having the strongest possible claim to support, the latter should be preferred. Whether the reason for doing so was good or not, it was for the Legislature to decide, and it adopted this policy in such plain language · that we are not justified in construing the word " children," having so simple and well understood a primary meaning, so as to include grandchildren.

This brings us directly to the more serious question, involving the constitutionality of the amendment of 1911. Article 1, section 18, of the Constitution, adopted in 1894, reads: " The right of action now existing to recover damages for injuries resulting in death, shall never be abrogated; and the amount recoverable shall not be subject to any statutory limitation." What was the right of action existing in 1894? This question has been answered many times but it is perhaps best summed up in *Matter of Meekin* v. *Brooklyn Heights Railroad Company* (164 N. Y. 145, 148, 149) as follows: " The theory of the statute is that damages should be recovered for injuries to the estate of the beneficiaries of the action, which injuries were caused by the death of the decedent. The beneficiaries named in the statute sustain such a legal relation to the deceased by blood or marriage that it is presumed they would have been pecuniarily benefited by his continuance in life, and hence damages are allowed for a wrongful act or omission causing his death. If he had lived, the support, education or services required from him by law, as well as benefits in the nature of gifts conferred in the past, might have been continued, to the pecuniary advantage of the beneficiary. So, the decedent, by continuing to live, might increase his estate and thus increase the amount to be inherited from him upon his death in the course of nature. Hence, the statute declares that the damages awarded shall be a fair and just compensation for the *pecuniary* injuries resulting from the death, not to the person injured, but to the person for whose benefit the action is brought.   *   *   *   The

amount of damages in this class of cases depends upon the value of the reasonable expectation of pecuniary benefits from the continuance in life by the decedent to the husband or wife and next of kin. This is a right of property which becomes vested in the beneficiaries at the moment of death and can be converted into money through a statutory action brought for their benefit by the personal representatives, who are simply trustees for the purpose."

The right of action is a property right of the beneficiaries of it. (*Hamilton* v. *Erie Railroad Company*, 219 N. Y. 343, 354.) In the case last cited the Court of Appeals said, referring to the next of kin: " The damages are theirs, not through the laws of intestacy or as a part of the estate of the intestate, but through their original right to them created by the statute."

Clearly then, when the Constitution was amended in 1894, in the case of death by wrongful act, there was an existing right of action, created by statute for the benefit, in part at least, of the next of kin of the deceased. They were absolutely entitled to have an action prosecuted in their behalf to recover the pecuniary damages sustained by them in the wrongful death of the deceased. By the Code amendment of 1911, in a case like the present one, the next of kin are debarred from receiving any part of a recovery of damages for the death of another, no matter to what extent they have sustained pecuniary injuries, and the entire proceeds of the cause of action are transferred to the widow. Can there be any doubt that, so far as the next of kin are concerned, their right of action has been abrogated? It is no answer to say that the cause of action is vested in the executor and that there has been no abrogation of the right of action because the action is still maintainable by the executor. The executor sues in his official capacity, but the action is for the benefit of others. The right of action has for its basis the legislative recognition of the right of the *beneficiaries* to recover damages sustained by them through the cutting off, by wrongful act, of the benefits which, it is presumed, they would have enjoyed from the continuance of the life of the deceased. If any of the beneficiaries are deprived of all possibility of recovering their

damages, it is idle to say that their right of action still exists. That would mean that they had the right to have suit brought, but could not recover. If the Legislature could abrogate the right of action as to some it could abrogate it as to all the beneficiaries and transfer the proceeds to creditors of the deceased. But in such case it would be apparent that the right of action had been abrogated, for although the widow and children had been by a wrongful act cut off from support, they could have no damages.

The intention of the framers of the constitutional amendment was to put the right of action, then existing, and as then definitely understood and construed, into the organic law of the State and beyond legislative interference. The convention debates, to which reference may be made (*Woollcott v. Shubert*, 217 N. Y. 212, 221), make this clear. These debates show that the main cause which led to the adoption of section 18 of article 1 was the fear that the Legislature might at some future time, out of hostility to the removal by the Constitutional Convention of the limitation of $5,000 as recovery in an action to recover damages for a wrongful death (Code Civ. Proc. [Laws of 1880, chap. 178], § 1904), abrogate the cause of action, whereas it was the desire of the Constitutional Convention to preserve all the benefits which the people of the State had theretofore derived from the settled construction which the courts had placed upon the statutes which had been in existence for many years. The debates show that the right of action referred to was the right of action then set out in the Code (§ 1902 *et seq.*) and that the question debated was: " Shall the right of action at all remain in the province of the Legislature or shall this convention put it in the organic law, there to remain and not be subject to the caprice of the Legislature? " The Revised Record of the Convention (Vol. II, p. 625) contains the following:

" Mr. Marshall — Mr. Chairman, I think it is pretty well settled that the opinion of this body is that limitations upon the amount of recovery, in cases which flow from injuries resulting in death, should cease. It is also, it seems to me, the idea of everybody present who has expressed himself upon this subject in favor of such limitation, that the right of action now existing, shall be continued. The fear is felt that perhaps the right of

action might at some time be abrogated by the Legislature. To cover both of these ideas I have framed a provision which I will read: ' The right of action to recover damages for injuries resulting in death, now existing, shall never be abrogated; and the amount recoverable shall not be subject to any statutory limitation.' The right of action which now exists is well defined in the statute. We all know what that is. It has been the subject of adjudication in this State for the last forty years. There is no doubt as to the meaning of this language, and, therefore, by reference to the cause of action now existing, and declaring that the right of action shall further continue, it avoids any circumlocution which has been suggested by some of the amendments here.    *    *    *

" Mr. Root — Mr. Chairman, I had prepared an amendment or a substitute which seemed to be adequate to meet the evident wishes of the Convention in regard to this matter, but after a conference with Mr. Marshall, and a comparison of our several papers, I am satisfied that his paper is better framed to accomplish the object of the Convention, and still preserve all the benefits which the People of the State have derived from the settled construction which the courts have placed upon the statutes that have been on our statute books for so many years. I, therefore, refrain from offering the amendment as I have drawn it, and shall support that of Mr. Marshall."

The proposed article was thereupon adopted. The conclusion is plain that both the limitation as to amount and the preservation of the existing right of action were under careful consideration and that the final outcome expressed the exact determination of the convention.

While it is conceded that there has been no adjudication upon the point in controversy, the learned counsel for the widow refers to three cases which, it is suggested, indicate that the Court of Appeals has not considered and, therefore, perhaps, would not consider such an amendment unconstitutional. One is *Matter of Snedeker* v. *Snedeker* (164 N. Y. 58) where the court recognized that, in some cases, a distribution to the widow *and* to the next of kin often worked an injustice to the widow, left without the support of her husband, and said: " The painstaking and able brief of the appellant's

counsel contains excellent arguments calculated to persuade the Legislature that the statute should be so amended as to prefer the widow and the fatherless, left without means of support, over the next of kin whose interest is, in such instances speculative and remote." Of course the court would not suggest an amendment that it considered unconstitutional, but whether such an amendment would be constitutional was not discussed or seriously considered and was not in issue. In *Radley* v. *Leray Paper Co.* (156 App. Div. 429; 214 N. Y. 32) it is claimed that the Court of Appeals assumed the validity of the amendment. But the constitutional question was not raised, and a court does not go out of its way to declare an act of the Legislature void, as is shown by the avoidance of the issue in *Shanahan* v. *Monarch Engineering Co.* (219 N. Y. 469). In *Matter of Connor* (98 Misc. Rep. 538; 178 App. Div. 955; 222 N. Y. 653) there was involved the amendment made by chapter 756 of the Laws of 1913 to section 1905 of the Code. That amendment interpolated after the words "the term, 'next of kin,' as used in the foregoing section, has the meaning specified in section 1870 of this act," the words "except if decedent leaves surviving a father and mother, but no widow, child or descendant, it shall mean *both* the father and the mother." Prior to the amendment "next of kin" under the circumstances described meant only the father. It is to be noted that this amendment differs radically from the 1911 amendment to section 1903. The latter *excluded* from the damages recoverable the damages to the estates of certain next of kin who had a right of action at the time of the adoption of the constitutional amendment, whereas the amendment to section 1905 under consideration in the *Connor* case *added*, for the consideration of the jury, the damages to an additional person, to wit, the mother. Thus the amendment to section 1903 *limited* the amount recoverable — something which was prohibited by the constitutional amendment — whereas the amendment to section 1905 *enlarged* the amount recoverable — something which is not at all prohibited by the constitutional amendment. In other words, the effect of the amendment to section 1905 is not to abrogate or limit the cause of action, but to create an additional one in the mother in exactly the same way as chapter 78 of the Laws of 1870 did

in the husband, and as chapter 600 of the Laws of 1902, requiring notice of injury to be given to the master as a condition precedent to the right to recover under the Employers' Liability Act, gave the employee an additional cause of action and did not restrict or limit the existing common-law action for negligence. (See *Gmaehle* v. *Rosenberg*, 178 N. Y. 147.) Having in mind that the Court of Appeals has steadfastly adhered to the policy of deciding only what is before it and declining to pass on questions which are not necessary to a determination of the appeal under review (*Matter of State Industrial Commission* [*Self-Insurer's Assn.* v. *State Industrial Commission*], 224 N. Y. 13, 17), it is impossible to consider *Matter of Connor* as an adjudication of the constitutionality of the amendment to section 1903, that question not having been involved in the case.

We are, therefore of the opinion that the word " children " in the 1911 amendment of section 1903 of the Code of Civil Procedure is to be construed as not including grandchildren, and that the amendment is void, as being violative of section 18 of article 1 of the Constitution of this State.

Whether it is competent for the Legislature to change the Statute of Distribution, and thus indirectly to modify or alter the right of action existing in those defined as beneficiaries at the time of the constitutional amendment, is not before us, for no such thing has been attempted.

It remains to consider the act of the surrogate in disregarding and setting aside the contract, pursuant to which the attorneys for the executor performed their services, and in fixing their compensation on the basis of what the surrogate, after the event, considered the services worth. This involves the validity of the contingent retainer contract, its effect and the power of the surrogate under section 1903 of the Code of Civil Procedure, which as it existed at the time of the death of Judge Bischoff read: " The plaintiff may deduct from the recovery [for the wrongful death of the decedent] the reasonable expenses of the action, the reasonable funeral expenses of the decedent, and his commissions upon the residue; which must be allowed by the surrogate, upon notice, given in such a manner and to such persons, as the surrogate deems proper." Section 474 of the Judiciary

First Department, May, 1919.                    [Vol. 188.

Law (Consol. Laws, chap. 30 [Laws of 1909, chap. 35], as
amd. by Laws of 1912, chap. 229) provides: " The com-
pensation of an attorney or counsellor for his services
is governed by agreement, express or implied, which is
not restrained by law." The validity of contingent fee
contracts has been long established. In *Morehouse* v. *Brook-
lyn Heights R. R. Co.* (185 N. Y. 520) Judge HAIGHT
said: " So that the mere fact that the attorney under the
agreement was to receive one-half does not render it uncon-
scionable, unless it appears from the evidence that it was
induced by fraud, or, in view of the nature of the claim, that
the compensation provided for was so excessive as to evince
a purpose on the part of the attorney to obtain an improper
or undue advantage over his client. (*Matter of Fitzsimons,*
174 N. Y. 15.) " If a fifty per cent contingent fee contract
is valid, of course a thirty-three and one-third per cent contract
is valid. The question is then whether such a contract,
ordinarily valid, is invalid when made by an executor, in the
sense that it is not binding upon the estate, in view of the
Code requirement that the only sum that may be deducted
from the recovery is the reasonable expenses of the action,
which must be " allowed " by the surrogate. It has been
decided by the Court of Appeals that the Code section in no
way affects the right of an executor to make a specific contract
with his attorney so long as it is fair and reasonable, and
that such contract must be enforced. (*Lee* v. *Van Voorhis,*
78 Hun, 575; affd., on the opinion of Mr. Justice HAIGHT, 145
N. Y. 603, and reaffirmed in *Matter of Atterbury,* 222 id. 355.)

In the *Lee* case the administratrix, as in the case at bar,
made a one-third contingent fee contract with her attorneys
to prosecute the action to recover for the wrongful death of the
decedent. After her attorneys had recovered a judgment for
her, she brought an action to declare the contract that she
made with them null and void. In affirming a judgment for
the defendants, Mr. Justice HAIGHT, writing for the court,
said (at pp. 578, 579): " It thus appears that the right to bring
and maintain the action is given by the express provisions of
the Code. In order to bring an action it was necessary for her
to have the services of an attorney. She must, therefore,
be deemed empowered to engage such services, and, as an

incident thereto, to agree upon the compensation that should be given therefor, with the qualification that the amount so agreed upon is fair and reasonable.    (*Matter of Application of Hynes*, 105 N. Y. 560, 563; *Taylor* v. *Bemiss*, 110 U. S. 42.)    *    *    *

    " In the case under consideration the action was not prosecuted for and on behalf of the estate, but was prosecuted for and on behalf of the widow and minor children.   The recovery was for their benefit, and the plaintiff, as administratrix, represented them in the action, and the employment of counsel by her to prosecute the action was the discharge of one of the duties that devolved upon her, and, under the provisions of the Code referred to, as such administratrix, she is expressly authorized to deduct from the recovery the expenses of the action.   This, we understand, includes all of the necessary and proper expenses incurred by her, including the services of her attorneys.

    " Section 66 of the Code provides that ' the compensation of an attorney or counselor for his services is governed by agreement, express or implied, which is not restrained by law.   From the commencement of an action or the service of an answer containing a counterclaim the attorney who appears for a party has a lien upon his client's cause of action or counterclaim, which attaches to a verdict, report, decision or judgment in his client's favor, and the proceeds thereof, in whosoever hands they may come, and cannot be affected by any settlement between the parties before or after judgment.'

    " Here we have an express provision of the statute authorizing the fixing of the compensation of attorneys by agreement.   We also have express provisions giving the attorney a lien upon his client's cause of action to the amount of the compensation so agreed upon.

    " It is contended that this provision did not operate to give the defendants a lien on the recovery, for the reason that the same did not belong to the plaintiff.   But we cannot assent to this interpretation of the provision.   It would, in many cases, operate to deprive the attorney of any compensation whatever, for he has no claim against the estate and the administrator may be insolvent.

    " As we understand, the provisions of section 66 give

the attorney. a lien, and section 1903 provides that the amount of his claim shall be deducted from the recovery by the administrator."

The only possible ground of distinction that can be pointed out between the case just quoted from and the one under review, is that in the *Lee* case section 1903 of the Code as it then existed (Laws of 1880, chap. 178) provided for the deduction from the recovery of " the expenses of the action," whereas the Code provision here involved has been amended so as. to provide for the deduction of " the reasonable expenses of the action." (See Laws of 1911, chap. 122.)*

But this amendment has created no change in the law as has already been decided by the Court of Appeals in *Matter of Atterbury* (222 N. Y. 355). That was an appeal from an order of this court which had reversed an order of the Special Term denying a motion to vacate two prior orders made by it fixing the fees of the petitioner for services rendered by him in prosecuting to judgment for an administratrix an action to recover for the wrongful death of her husband. Mr. Justice SCOTT, writing for this court (*Matter of Atterbury*, 179 App. Div. 648), said, in reversing the order of the Special Term: " Section 1903 of the Code of Civil Procedure confides the duty of allowing the expenses of such an action, which includes the compensation of counsel, to the surrogate, meaning, of course, the surrogate who issued the letters testamentary or of administration. The discretion of the surrogate in allowing the reasonable expenses of such an action cannot be controlled by any agreement the executor or administrator makes with the attorney. (*Matter of Meng*, 96 Misc. Rep. 126.) As we consider, the exclusive power to fix an attorney's fee in such a case, at least in the first instance, is vested in the surrogate. Whether the Appellate Division can review his discretion is not before us for consideration." (P. 651.)

The executor in the present case obtained leave to intervene on the appeal which the petitioner in the *Atterbury* case took to the Court of Appeals (222 N. Y. 355), where the order was unanimously reversed. The court reaffirmed the doctrine of *Lee* v. *Van Voorhis* (*supra*) and disposed, in the following

* Since amd. by Laws of 1915, chap. 641.— [REP.

language, of the argument that the case under consideration was distinguishable from the *Lee* case because of the subsequent amendment of section 1903 of the Code of Civil Procedure, which interpolated " reasonable " before the word " expenses: " " Meanwhile section 1903 of the Code had remained unchanged.   In 1911, however, it was amended by the insertion of the word ' reasonable '— so that the plaintiff might deduct the reasonable expenses of the action. We do not understand that the existing law was altered. The word ' reasonable ' was always implied."   (222 N. Y. 360.)

In *Murray* v. *Waring Hat Mfg. Co.* (142 App. Div. 514) the court, in holding that an attorney who had contracted with an administratrix for a forty per cent contingent fee for services to be rendered by him in prosecuting an action to recover for the death of her husband, was ·entitled to retain as his fee forty per cent of a $10,000 settlement made before trial, said (at p. 517):

" Section 474 of the Judiciary Law provides: ' The compensation of an attorney or counsellor for his services is governed by agreement, express or implied, which is not restrained by law.'   As I have said, the court decided that the contract ' was marked with absolute candor and good faith.'   The terms thereof were not unconscionable.   (*Morehouse* v. *Brooklyn Heights R. R. Co.*, 185 N. Y. 520.)   If the compensation seemed large when finally determined by the resistance of the defendant to the claim, it must be remembered that the compensation agreed upon was contingent, and, therefore, properly larger than if absolute (*Morehouse* v. *Brooklyn Heights R. R. Co.*, 123 App. Div. 680; affd., 195 N. Y. 537), and that when entered into, the extent of the services required could not be forecast.

" I think that the court had no power, upon the grounds taken by it, either to disregard the agreement or to reform it.

" So far as the case presents the feature of an administrator, it is, I think, disposed of by the judgment in *Lee* v. *Van-Voorhis* (78 Hun, 575; affd., 145 N. Y. 603)."

This case was followed in *Matter of Summerville* (145 App. Div. 931) and *Matter of Reich* (170 id. 912).   (See, also, the

opinion of the surrogate of Bronx county in *Matter of Weber*, 102 Misc. Rep. 635, decided February, 1918.)

But, forced to concede that such a contract between an executor and an attorney as we have here, is valid when made, it is contended that it may become invalid and unenforcible if, after it has been performed, and looking backward, it appears that the services were not fully worth the sum agreed to be paid. If this were so, obviously no contingent retainer contract would be worth the paper on which it was written, for it would always be open to the client, after the services of his attorney were fully performed, to repudiate his contract and assert that, in the light of after events, the agreed fee was too high. It has been uniformly held that where, as here, it is conceded that a special contract has been made, it is reversible error, in an action brought to recover thereunder, to receive evidence of the reasonable value of the subject of the contract. (*Marsh* v. *Holbrook*, 3 Abb. Ct. App. Dec. 176; *Matter of D'Adamo*, 94 Misc. Rep. 1; *Werner* v. *Knowlton*, 107 App. Div. 158; *Robinson* v. *Hunt*, 88 Hun, 285, 288.) In this connection, counsel for the executor cite a peculiarly apposite statement of Mr. Justice BREWER, in *United States* v. *Bell Telephone Co.* (167 U. S. 224) where he said (at p. 261): " But a wisdom born after the event is the cheapest of all wisdom. Anybody could have discovered America after 1492."

It is also said that while it may be conceded that an agreement to pay an attorney one-third of the recovery would be reasonable where the verdict was for $20,000 or $30,000 it is unreasonable where the verdict is $70,000. Passing the point already considered, that the validity of the contract must be determined as of the time when made, I fail to perceive the logic of such reasoning. Why should a better result for the client make the contract unenforcible? Beyond what particular degree of success should a large verdict be at the cost of the attorney whose ability procures it? The only conceivable basis for such a contention must be that a $70,000 verdict requires no more time and labor on the part of the attorney than a $20,000 verdict. Experience tells us, however, that it requires much greater professional skill, shrewdness and all-around ability.

Such qualifications come from years of hard work and preparation, and when they produce results far above the average it is only just and reasonable that they should be paid for.

Finally it is argued that an agreement to pay one-third of the recovery was unreasonable in this particular case, and that this was apparent when the contract was made. This is because, it is said, the case was a simple one and because, owing to the amount of a judge's salary and to the known expectancy of life, the verdict was in all probability bound to be $60,000 or more, and that, looking ahead, a fee of $20,000 or more was far in excess of the value of the contemplated services. Here again is suggested Justice BREWER's observation that "Anybody could have discovered America after 1492." But merely because this was a negligence case, it did not follow that it was so simple. The record shows that both on the issue of contributory negligence and defendant's negligence, the case was close and full of difficulty. The only witness of the accident was the elevator operator, who was in defendant's employ. How to meet defendant's claim of contributory negligence was a problem. Whether to put defendant's employee on the stand, and, if so, how far he could be safely interrogated were questions calling for the best judgment and skill. Whether to rely on the principle of *res ipsa loquitur* or attempt to prove a violation of certain ordinances was another serious question. Even on the issue of damages, once the point of liability was successfully passed, there were embarrassments. Ordinarily the widow would be an important, if not a necessary, witness, on this head. Yet after thoroughly canvassing this phase of the case with the widow, it was deemed best to allow the case to go to the jury without her testimony. It is apparent that the case was not so simple and that it was by no means certain that there would be a large recovery. It is common experience that when the question of liability is close and sharply contested it is reflected in the verdict when the plaintiff succeeds. Some jurors will compromise on the issue of liability for a concession from others on the amount of the damages. Further, it may be noted that the trial justice, remarking that the case had been carefully tried from trial briefs, complimented counsel on the careful and thorough manner in which the issues

First Department, May, 1919. [Vol. 188.

had been presented. I do not see how, therefore, it can be fairly said that it appeared when the contract was made that one-third of the recovery would be an unreasonable compensation, representing an attempt on the part of an attorney to over-reach his client; especially when all of the attorney's time, work and ability would go absolutely without any compensation unless he won the case.

This brings us to the effect of the contract, *i. e.*, whether or not it is conclusive as to the reasonableness of the amount paid out by the executor pursuant to its terms. It is not clear to me how it can be that when a contract to pay an agreed amount for services to be rendered is lawful and reasonable, the sum thereafter actually paid for the rendering of the services, as stipulated, can be held to be unreasonable. If suit were brought in the Supreme Court upon such an agreement, once the agreement and the rendition of the services were proved, a verdict would be directed against the executor. Yet it is said that the surrogate can disregard the agreement and fix the value of the services. Of course it will be said that this is because an executor contracts as an individual and cannot bind the estate. (*Austin* v. *Munro,* 47 N. Y. 360.) But this very point was considered by the General Term and the Court of Appeals in *Lee* v. *Van Voorhis* (*supra*), and the court said:

" Whilst no liability may be created against the estate, yet, where the prosecution is for and on behalf of the estate, a liability by the executor or administrator individually is created, and, if the contract is fair and reasonable, such executor or administrator may be reimbursed out of the estate. * * *

" Here we have an express provision of the statute authorizing the fixing of the compensation of attorneys by agreement. We also have express provisions giving the attorney a lien upon his client's cause of action to the amount of the compensation so agreed upon.

" It is contended that this provision did not operate to give the defendants a lien on the recovery, for the reason that the same did not belong to the plaintiff. But we cannot assent to this interpretation of the provision. It would, in many cases, operate to deprive the attorney of any compensation

whatever, for he has no claim against the estate and the administrator may be insolvent."

It is urged that an executor can protect himself by stipulating that he shall not be personally liable upon such a contract, in which case the attorney would know that he would have to prove the reasonableness of his fee, no matter what the contract. But in such case the contract would be a nullity, practically and legally. If the executor cannot bind the estate and does not bind himself, there would be no contract. Neither does this contention seem to fit in with the decision in *Matter of Atterbury (supra)*. There it was held that the attorney's contract with the executor gave him a lien upon the cause of action; that he was entitled to have the lien fixed in the usual way and that it should be deducted before the payment of the judgment to the estate; also that, being so fixed in the usual way in the Supreme Court, the surrogate in passing on the executor's accounts, could not question the reasonableness of the payment. True, the contract was not contingent, and the lien was for the reasonable value of the services. But if the contract had been for a stipulated contingent fee, and this was lawful and reasonable when made, the contract would have determined the amount of the lien. So that while, technically speaking, the executor's contract is personal, it does practically bind the estate, in the sense that it governs the amount receivable by the estate out of the proceeds of an action prosecuted in its behalf by an attorney employed by the executor under a contract which is lawful when made and provides for a reasonable compensation.

What, then, it may be inquired, was the power of the Surrogate's Court under the Code section as it read at the time in question? It could inquire into any charge of fraud or coercion or unfairness practiced by any officer of the court upon its wards, and nullify the wrong by refusing to sanction any payment so procured. It could disregard a contract which was on its face unconscionable or which, in view of the circumstances existing when made, was unreasonable. But when none of these facts appeared, it had no power to treat a lawful and reasonable contract as so much waste paper and hold that, in the light of after-events, the services paid for were not worth the sum agreed to be paid, and accordingly fix

for the parties the fee, which, according to section 474 of the Judiciary Law, may always be fixed by agreement, unless restrained by law. I am unable to reach any other conclusion in view of the decisions of our highest court in *Lee* v. *Van Voorhis* (*supra*) and *Matter of Atterbury* (*supra*).

The decree, so far as appealed from by the widow, claiming that she is entitled to the whole fund, should be affirmed; and, in so far as appealed from by the executor, should be reversed; new findings submitted and a decree entered thereon passing the account as filed, without costs but with the taxable disbursements to be paid out of the entire fund; and the order of April 10, 1917, should be affirmed, without costs.

Decree affirmed, with costs to special guardian, respondent, payable out of the fund.

